UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

BRYAN JINKINS,

     PLAINTIFF,

v.

                            Case No.:   2:21-cv-89

EQUIFAX INFORMATION SERVICES,
LLC, *ET AL*.,

     DEFENDANTS.

## COMPLAINT

Plaintiff Bryan Jinkins ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc. ("Experian"), Pentagon Federal Credit Union and Trans Union, LLC[1] as follows:

## PRELIMINARY STATEMENT

1.    This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.    Indeed,

> Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") was enacted "to ensure fair and accurate credit

---

[1] Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc. and Trans Union, LLC are referred to collectively as the "CRA Defendants."

reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D.

Va. Mar. 18, 2011).

      3.     Accordingly, and

In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc*., No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D.

Va. Mar. 18, 2011).

      4.     Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that

consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for

consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

6. The CRA Defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

7. In the regular course of business, the CRA Defendants maintain records of lawsuits filed against them, and the lists of other similar incidents are readily accessible to said defendants.

8. The CRA Defendants have been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

9. Likewise, the FCRA imposes duties on persons who furnish information to a consumer reporting agency ("furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).

10. Specifically, the furnisher must satisfy five duties after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A-E).

3

11. Despite federal law, Congressional mandate, federal and state government enforcement actions, thousands of consumer lawsuits, credit report errors remain a significant problem for consumers, including Plaintiff.

## JURISDICTION & VENUE

12. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C § 1331.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

14. Plaintiff Bryan Jinkins ("Plaintiff") is an adult individual and resides within this judicial district. Plaintiff is also a "consumer" as defined by 15 U.S.C. § 1681a(c).

15. Defendant Equifax Information Services, LLC ("Equifax") does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a CRA as defined by 15 U.S.C. § 1681a(f). Equifax outsources certain business processes, including consumer disputes, to companies located outside of the United States, including India, Philippines and Costa Rica. One of Equifax's dispute vendors is Teleperformance, formerly known as Intelenet.

16. Defendant Experian Information Solutions, Inc. ("Experian") does business in this judicial district and is an Ohio corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, California 92626. Experian is a CRA as defined by 15 U.S.C. § 1681a(f). Experian outsources certain business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

17. Defendant Trans Union, LLC ("Trans Union") does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams St., Chicago, Illinois 60661. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union

outsources business processes, including consumer disputes, to other countries, such as India. One of Trans Union's dispute vendors is Teleperformance, formerly known as Intelenet.

18. Defendant Pentagon Federal Credit Union ("PFCU") is a person who furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2[2], and conducts substantial and regular business activities in this judicial district. PFCU is a national credit union with its principal place of business located at 7940 Jones Branch Drive, Tysons, Virginia 22102.

## FACTUAL ALLEGATIONS

19. The CRA Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

20. The CRA Defendants sold credit reports relating to Plaintiff to third parties with inaccurate and derogatory information.

21. The inaccurate information includes, but is not limited to, an installment account with PFCU for partial account number ending in 9865 ("Account 1") and a home equity line of credit with partial account number ending in 9886 ("Account 2") (collectively, Accounts 1 and 2 are referred to throughout as the "Accounts").

22. Account 1 was reported as past due and with a past due balance owed of over $16,000. This is untrue. Plaintiff did not owe any monies to PFCU for Account 1. Account 1 was included in and discharged in Plaintiff's Chapter 7 bankruptcy.

23. Account 2 was reported as closed and included in bakruptcy. This is not true because Account 1 was not included in Plaintiff's bankruptcy. Account 2 is open and Plaintiff continues to make payments on the account. Account 2 was reaffirmed by the bankruptcy court.

---

[2] Plaintiff is making a claim against PenFed under § 1681s-2(b). Plaintiff is not making a claim against said defendant under § 1681s-2(a).

Notwithstanding, PFCU and the CRA Defendants reported Account 1 as past due and with a past due balance and Account 2 as closed and included in bankruptcy.

24.     The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict his credit history or creditworthiness, or both.

25.     Negative items of information on a consumer's credit file reduce the consumer's credit score under the Fair Isaac Company ("FICO") score models.

26.     The reporting of Account 1 as late and with a past due balance is patently inaccurate.

27.     The reporting of the Account 1 as late and with a past due balance is misleading, at best.

28.     The reporting of the Account 2 as included in bankruptcy and closed is patently false.

29.     The reporting of Account 2 as included in bankruptcy and closed is misleading, at best.

## Plaintiff's Experience with Equifax

30.     Equifax prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.

31.     In the two years preceding Plaintiff's Complaint, he disputed the inaccurate information to Equifax on no less than five (5) occasions. Equifax did not delete or reinvestigate all of the disputed items of information.

32.     Alternatively, Equifax failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information. More specifically, Plaintiff

supplied copies of the bankruptcy papers, including orders from the bankruptcy court, which were sufficient for Equifax to not be able to verify the disputed items of information.

**Plaintiff's Experience with Experian**

33.    Experian prepared and issued consumer reports concerning Plaintiff that included the inaccurate information.

34.    In the two years preceding Plaintiff's Complaint, he disputed the inaccurate information to Experian on no less than five (5) occasions. Experian did not delete or reinvestigate all of the disputed items of information.

35.    Alternatively, Experian failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.  More specifically, Plaintiff supplied copies of the bankruptcy papers, including orders from the bankruptcy court, which were sufficient for Experian to not be able to verify the disputed items of information.

**Plaintiff's Experience with Trans Union**

36.    Trans Union prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.

37.    In the two years preceding Plaintiff's Complaint, he disputed the inaccurate information to Trans Union on no less than five (5) occasions. Trans Union did not delete or reinvestigate all of the disputed items of information.

38.    Alternatively, Trans Union failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.  More specifically, Plaintiff supplied copies of the bankruptcy papers, including orders from the bankruptcy court, which were sufficient for Trans Union to not be able to verify the disputed items of information.

7

39.     The CRA Defendants also did not review underlying account documents for each account contained in his file or the subject of Plaintiff's disputes, or both, such as the bankruptcy records or payment history.

40.     The CRA Defendants did not make a reasonable inquiry into the disputed information.

41.     The CRA Defendants did not review all relevant information provided by Plaintiff related to the disputed information.

42.     At best, the CRA Defendants verified the false information by confirming some of Plaintiff's personal identifying information with some of the personal identifying information reported by PFCU.

43.     The CRA Defendants failed to modify or delete the inaccurate information.

44.     Despite Plaintiff's exhaustive efforts to date, the CRA Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

**Plaintiff's Experience with PFCU**

45.     Plaintiff disputed the inaccurate information directly to PFCU.

46.     PFCU failed to report the account with the appropriate account in dispute code to the CRAs.

47.     Plaintiff disputed the inaccurate information to Equifax, Experian, or Trans Union.

48.     Equifax, Experian, or Trans Union notified PFCU of the disputed information.

49.     PFCU notified Equifax, Experian, or Trans Union that it verified the disputed information.

50.      As a part of PFCU's FCRA investigation, it did not:

8

a. contact Plaintiff concerning the accuracy of the disputed information;

b. contact third parties, including but not limited to its bankruptcy attorneys' or the bankruptcy court, concerning the accuracy of the disputed information;

c. review underlying account documents, such as the bankruptcy papers or Plaintiff's payment history;

d. make a reasonable inquiry into the disputed information, including a review of the bankruptcy papers or direct payments made by Plaintiff;

e. review all relevant information provided by a consumer reporting agency pertaining to the disputed information;

f. modify or delete the false account information; or,

g. mark or identify the account as in dispute.

51. At best, PFCU verified the false information by confirming some of Plaintiff's personal identifying information related to the Accounts with some of the personal identifying information reported by a consumer reporting agency.

52. PFCU notified at least one consumer reporting agency that its reporting of the inaccurate information was accurate.

53. PFCU did not conduct a reasonable investigation with respect to the disputed information.

54. As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of adverse credit action, denial of credit, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities and emotional distress.

55.     At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

56.     At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

57.     The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Plaintiff that are outlined more fully above and, as a result, the defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

58.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

59.     Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

60.     Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

61.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)

62. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

63. Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

64. Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

65. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

66. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

67. Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

68. Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b) and i.

69. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against PFCU)

70. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

71. PFCU negligently failed to comply with the requirements of Section 1681s-2(b).

72. Alternatively, PFCU willfully failed to comply with the requirements of Section 1681s-2(b).

73. As a result of PFCU's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which he seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

## JURY DEMAND

74. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

   1. Actual damages to be determined by the jury;

   2. Punitive damages to be determined by the jury;

   3. Statutory damages to be determined by the jury; and

   4. Attorneys' fees and costs.

On the Second Claim for Relief:

   1. Actual damages to be determined by the jury;

   2. Punitive damages to be determined by the jury;

   3. Statutory damages to be determined by the jury; and

   4. Attorneys' fees and costs.

On the Third Claim for Relief:

   1. Actual damages to be determined by the jury;

   2. Punitive damages to be determined by the jury;

12

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Fourth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TN BAR NO. 036451
THE ADKINS FIRM, P.C.
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T:  (615) 370.9659
F:  (205) 208.9632
E:  MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*BRYAN JINKINS*